**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――――

| | : | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| ADAM M. BESCHLOSS, | : | Case No. 15-12139 (MEW) |
| | : | |
| Debtor. | : | |
| | : | |

―――――――――――――――――――――――――――――――

**BENCH DECISION REGARDING MOTION TO HOLD BRESSLER, AMERY AND
ROSS, P.C. AND ANGELA SCAFURI IN CONTEMPT FOR VIOLATION OF
<u>DISCHARGE INJUNCTION AND FOR AWARD OF DAMAGES</u>**

APPEARANCES:

For Adam Beschloss:
   WELTMAN & MOSKOWITZ, LLP
   270 Madison Avenue, Suite 1400
   New York, New York 10016
      By:   Michele K. Jaspan, Esq.

For Bressler, Amery and Ross, P.C.
   BRESSLER, AMERY AND ROSS, P.C.
   325 Columbia Turnpike
   Florham Park, New Jersey 07932
      By:   Angela M. Scafuri, Esq.

**MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion by the debtor, Adam Beschloss, to hold the law firm of Bressler, Amery & Ross and an attorney in that firm, Angela Scafuri, in contempt for alleged violations of the discharge injunction that is set forth in section 524 of the Bankruptcy Court and in the discharge orders that were entered by this Court in the chapter 7 bankruptcy case that Mr. Beschloss filed in 2015.

      At the outset of this proceeding the parties agreed on certain basic facts that are not in dispute. The debtor's bankruptcy petition was filed on July 31, 2015. The discharge notice

was issued on November 3, 2015, and the case was closed on November 6, 2015. An amended discharge order was issued in September 2017.

The parties have also agreed that the Bressler law firm was scheduled as having a claim of $54,132.57 in Mr. Beschloss's bankruptcy case. While there was some disagreement at the outset of the trial today as to whether the law firm did any work after July 31, 2015 for which it might be entitled to compensation, I understand the testimony of Ms. Scafuri nearer to the end of the day to have acknowledged that the last work was done prior to the bankruptcy filing and, therefore, that the entirety of the law firm's claim was a pre-petition claim.

I believe there is no dispute that that claim was a pre-petition claim that was discharged unless there is something in the Bankruptcy Code or in the conduct of the debtor that would allow the continued enforcement of that claim.

It was agreed by the parties that the debtor never signed a reaffirmation agreement or submitted a reaffirmation agreement to the Court of the kind that is contemplated by section 524(c) of the Bankruptcy Code, and never was asked to do so.

It was also conceded that the Bressler law firm received notice of the discharge. The notice may have been sent to a different partner in the first instance, but Ms. Scafuri did receive a copy, maybe not immediately, but within a few weeks of the issuance of the discharge notice, and that seems undisputed.

I should also note some other agreements that the parties made at the outset of the case. First, they agreed that, to the extent that there is a claim for attorneys' fees based on the alleged breach of the discharge injunction, that I should first decide, today, whether there was a discharge, and that the documentation of the attorneys' fees and the issue of how much

attorneys' fees, if any, should be awarded, should come later.   I think that is the appropriate procedure, but with the agreement of the parties, it is definitely the appropriate procedure.

At the outset of the day today, the law firm also agreed that it does not oppose the issuance by me of an order finding that the debt to the law firm was discharged, and does not oppose the entry of an injunction by me enjoining the law firm from taking any additional actions to enforce the obligation, although the law firm has not really admitted that the debt was discharged and, in defense of its actions, continues to argue that the debtor made agreements that had effect of allowing the law firm to continue to pursue payment of the obligations.

As to those alleged agreements: the evidence before me shows that prior to the bankruptcy there were some discussions between Mr. Beschloss and Ms. Scafuri about whether the debtor would make payments to the law firm even if the debtor's obligations were discharged in bankruptcy.   Exhibit DX-D shows that Mr. Beschloss said quite clearly, prior to the bankruptcy, that he would make payments notwithstanding a discharge of his obligations.   In another exhibit, DX-G, Mr. Beschloss referenced that prior commitment; that is on July 22, 2015.   So, there is support for the contention that the debtor did have an understanding with the law firm that he would make payments to the law firm.

The problem is that any such agreements are entirely unenforceable for two reasons.  First, any pre-bankruptcy promise to make a payment, if it created an obligation, was itself subject to discharge.   A discharge in a chapter 7 bankruptcy discharges all obligations that arose prior to the filing of the bankruptcy case.   So, whether the obligation to pay the law firm's fees was based on an initial retainer agreement from several years earlier, or based on quantum meruit for the work that they performed, or based on a promise to pay for the additional work, or based on a promise to pay even if the debtor got a discharge, those are all pre-bankruptcy agreements.

3

They are all subject to discharge.   And there is nothing that has been alleged that would except those pre-bankruptcy obligations from discharge.

Second, the Bankruptcy Code is quite clear and quite limited in describing the extent to which a debtor may reaffirm or continue the effect of an obligation notwithstanding a discharge. The Bankruptcy Code is intentionally protective of debtors in this respect.   It does so because the whole idea of a discharge is key and fundamental to bankruptcy.   The Bankruptcy Code expresses the policy view that debtors ought to be discharged unless certain other requirements are met.

More specifically, section 524(c) of the Bankruptcy Code says that: "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived" and only if certain conditions are met.   One such condition is that such agreement has to have been "made before the granting of the discharge."   Another condition is that the debtor have "received the disclosures described in subsection 524(k) at or before the time at which the debtor signed the agreement."   Yet another condition is that such agreement has "been filed with the Court and, if applicable, accompanied by a declaration or an affidavit of attorney that represented the debtor during the course of negotiating [the] agreement."   Even if those conditions are satisfied, the agreement is enforceable only if "the debtor has not rescinded [the] agreement at any time prior to discharge or within sixty days after [the] agreement is filed with the court, whichever occurs later."   11 U.S.C. § 524(c).

It is agreed by the parties that these conditions were not met; that nothing happened that would bring section 524(c) into play.   The argument is that the debtor made agreements before

4

the bankruptcy case that nevertheless should be enforced, but that cannot be the outcome under section 524(c) because, by its terms, 524(c) says that an agreement of the kind we are discussing is *only* enforceable if the conditions set forth in section 524(c) are complied with, which did not happen here.

I cannot find under any theory of estoppel, or anything else, that an agreement is enforceable notwithstanding a failure to comply with section 524(c), because that would undermine the whole purpose and intent of section 524(c). I emphasize that the point of section 524(c) is to protect debtors who promise to make payments on discharged debts by saying that those promises are unenforceable unless certain conditions are met. It would be odd, indeed, to say that a debtor should be estopped, by virtue of making such a promise, from invoking the protections of section 524(c), when the whole point of section 524(c) is to make those promises unenforceable.

I find that there was no enforceable agreement under section 524(c). It has been alleged that there were agreements or, at least, reaffirmations or commitments or discussions after the bankruptcy with respect to this pre-bankruptcy debt. But once again, section 524(c) says that an agreement to pay such a debt is enforceable only if certain conditions are met, one of which is that the agreement is made before the granting of the discharge. No agreement made before the granting of the discharge here could have been enforceable because there was nothing filed with the Court, and by its terms section 524(c) does not allow an agreement, after the discharge, to pay the debt.

There is nothing in the evidence before me that shows that there was an obligation that escaped the discharge. Quite frankly, the law firm should have known that.

5

The evidence before me also shows that the law firm initiated all discussions after the discharge that related to the collection of this debt. The initial discussion was in November of 2015, at which point the law firm asked about payments and was told about the bankruptcy discharge, following which a copy of the discharge notice was sent to Ms. Scafuri. The debtor did acknowledge that he had intended to make some payments early the next year but, at the same time, he also informed the law firm of the discharge.

The evidence shows that, in February 2016, the law firm, through Ms. Scafuri, in DX-O, initiated a re-discussion of the topic by asking where the parties were at, which I think, by admission, meant where are we in terms of payment. At that point, the debtor responded, in exhibit DX-P, by saying he had not forgotten his commitments. Then, in March, in exhibit DX-R, it was the law firm that left a message, following up on the status of payments. In May, in exhibit DX-T, it was the law firm, through Ms. Scafuri, who sent an e-mail saying she had "to ask," which, I think, was admitted as meaning that she had to ask about payments. At that point, the debtor responded that he was waiting on hearing about bonus information. In June, the law firm, again, in DX-W, in an e-mail from Ms. Scafuri, said that the law firm wanted a payment plan. In November, in exhibit DX-DD, Ms. Scafuri sent an e-mail saying the parties needed to discuss the balance and a payment plan. At which point, the debtor responded "I'm sorry about the discharge of my debt to you." [DX-EE].

At that point, in November 2017, the law firm ramped up its efforts to collect the debt. In exhibit DX-HH, it made a stronger threat to take legal action if the debtor did not come up with an acceptable alternative. The law firm then actually filed legal action in February 2018, as evidenced by exhibits PX-19 and PX-20, and then sent a formal demand for payment that is in evidence as exhibit PX-20.

All of this, including the emails and conversations, constituted efforts to collect the discharged debt. Admittedly, they served no purpose other than to do so. They were all premised on the idea that there was an enforceable legal obligation that remained notwithstanding the discharge, even though, in fact, there was not. In context, they all violated the discharge injunction.

The debtor did make one payment of $1,000 after a number of such e-mails in the summer of 2016. In context, that was not a voluntary payment.

Section 524(f) of the Bankruptcy Code says that "[n]othing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." 11 U.S.C. § 524(f). However, the case law is quite clear that this exception is construed strictly against creditors, and that payments are only voluntary if "they are not *in any manner* induced by the acts of the creditor." *In re Nassoko*, 405 B.R. 515, 524 (Bankr. S.D.N.Y. 2019) (Gropper, J.) (emphasis added). I cannot find that the payment here was voluntary.

In arguing whether a payment was voluntary, it is not enough to prove that the payment was made with something less than a gun to the debtor's head. Rather, the exception applies only if the debtor, entirely on his own volition, and without prompting from the creditor – or encouragement from the creditor, or reminders from the creditor, or entreaties from the creditor, or any other pleas from the creditor – has made the payment. That plainly is not the case here. Here, the creditor not only acted as though the debt was still enforceable, it implied through its repeated contacts that the debtor had an obligation that he needed to honor. Ms. Scafuri also invoked the potential personal bad consequences to her compensation if the debtor did not pay, and she did so in order to try to induce him to pay. All of that, under the case law, constitutes a

7

violation of the discharge injunction and means that the one payment that was made was not "voluntary" as that term is used in the statute.

As I mentioned, the law firm also ramped up its actions in November 2017 and in February 2018. Now, in terms of what the consequences of this are, it is quite clear that all of the conduct that occurred here was taken intentionally. Ms. Scafuri did not accidentally send reminders of the debt. She did not accidentally ask for payment plans. She intended to ask for payment plans. She testified that she did so in the belief that the debtor's promises made before the bankruptcy would be enforceable. But, that is not enough to excuse the actions and violation of the injunction.

The injunction against violation of the discharge would be meaningless if it could be violated so easily. And, in fact, if it could be violated that easily, it would do nothing but encourage creditors to make themselves ignorant of the provisions of section 524(c) because then they could harass debtors forever without fear of consequence.

The law is different. Maybe the rule is a little different as to punitive damages, but as to whether the violation of the injunction has occurred, the case law is quite clear that all that needs to be shown is that the conduct was intentional, whether the person engaging in it actually did or did not read the Bankruptcy Code, understand the Bankruptcy Code, or have a belief that they were violating the terms of the discharge injunction.

It is especially important that creditors who regularly may have debtors who go into bankruptcy are familiar with these rules. I especially expect that a law firm that has its own bankruptcy department would take steps to familiarize itself with these requirements, and to ensure that when the law firm receives a notice of discharge that it does not merely assume that

15-12139-mew    Doc 18    Filed 05/08/18    Entered 05/08/18 09:29:11    Main Document
Pg 9 of 13


subsequent efforts to collect a pre-bankruptcy debt are okay, but instead takes steps to research the issue and to ensure that any continued collection steps are appropriate and permissible.

The law firm did not do so here. In fact, even when informed by Debtor's counsel, as clearly as could be, of the explanation as to why the law firm's actions violated the discharge injunction, in a letter dated February 20, 2018, the law firm responded by saying, in effect, "nuts to you" – that the allegation that the law firm violated the discharge was wrong, that the debtor had made promises, that those promises were perfectly enforceable, and that what the law firm was doing was okay. [PX-22] There were suggestions in subsequent letters that the law firm might be willing to compromise, but there was no backing down on the law firm's position, and no indication until March 30, 2018 that the petition that the law firm had filed in New Jersey to try to collect part of the pre-petition debt would be withdrawn.

I should note an irony, by the way, as to the escrowed funds that are the subject of the New Jersey action. It seems quite clear that *if* the debtor had any residuary interest in these escrowed funds, they would not go to the debtor, they would instead go to the debtor's estate, because the funds were put in escrow prior to the time of the bankruptcy. If they ever were to come out in favor of the debtor, they would have to be given to the trustee to be administered in accordance with the chapter 7 case, which might have to be reopened. But it also seems clear to me from the testimony that there was never any intent when this escrow was established that it would be for any purpose other than to protect the debtor's ex-wife, and that nobody, including the law firm and the debtor, ought to have any interest in it except the debtor's ex-wife. But I will let the New Jersey court decide the specifics of that issue.

I find here that actions were taken intentionally. They had the effect of violating the discharge injunction. And they continued even after the effect of the injunction was brought to the attention of the law firm.

As to what the applicable burden of proof is here, and whether on some of these points it is preponderance of the evidence or otherwise a clear and convincing evidence standard, it does not matter because no matter what standard I apply here, I reach the same conclusion. The evidence is more than clear and convincing that these violations occurred and that the actions were intentional, even if, as I say, it may be that Ms. Scafuri, herself, did not understand when she did it that she was violating a provision of the Bankruptcy Code. If she had that understanding, it was only because she took no steps to figure out what it was permissible for her to do.

So I come to the consequences of this. One consequence is I am going to order that the law firm repay the $1,000 that the debtor paid. That was not a voluntary payment within the meaning of 11 U.S.C. § 524(f) and should not be kept, and the law firm should return it.

Another consequence is that I am going to order the law firm to pay the attorneys' fees and legal expenses that were incurred to enforce the discharge injunction. As I mentioned before, we have an agreement that such fees and expenses will be by separate application, as it really has to be, since only some of those attorneys' fees were incurred before today. Others are being incurred today, and it would be silly to try to require proof during today's trial of what is, effectively, a moving target. So, the application as to the amount of attorneys' fees and

10

expenses will be by separate application unless the parties can reach agreement as to what that amount would be.[1]

Finally, the debtor has made a request that I award punitive damages.[2] The correct standard for punitive damages is higher than the standard for finding a violation of the injunction. In order to award punitive damages I need to find something that amounts to malevolent conduct that demonstrates a complete and utter disrespect for the bankruptcy law.

---

[1] The return of the $1,000 payment, and the award of attorneys' fees and expenses, are intended to constitute compensatory damages for the violations of the discharge injunction that occurred. My authority to award such compensatory damages is set forth in 11 U.S.C. § 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Yaghobi v. Robinson*, 145 Fed. App'x 697, 699 (2d Cir. 2005) (noting that section 105(a) confers "limited equitable powers on the bankruptcy court to issue orders necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," including the discharge injunction); *see also In re Anderson*, 550 B.R. 228, 239 (S.D.N.Y. 2016) ("bankruptcy courts can invoke § 105 to enforce a discharge injunction"); *In re Eppolito*, No. 12-36721, 2018 WL 539773, at *5 (Bankr. S.D.N.Y. Jan. 23, 2018) ("Bankruptcy courts may appropriately use their civil contempt power under § 105(a) to order monetary relief in the form of actual damages, including attorney's fees . . . for violation of the discharge injunction." (internal citation omitted)); *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) ("compensatory damages . . . may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction"); *Erhart v. Fina*, No. 112 660, 2012 WL 12870343, at *7 (E.D. Va. Nov. 14, 2012) (affirming compensatory damages for a violation of the discharge injunction and noting that "under prevailing precedent, 'the state of mind with which the contemnor violated the court order is irrelevant and therefore good faith, or the absence of intent to violate the order is no defense'"), *aff'd sub nom. In re Fina*, 550 Fed. App'x 150 (4th Cir. 2014).

[2] Although the Second Circuit has not spoken to the issue of whether punitive damages may be awarded in connection with violation of the discharge injunction, 11 U.S.C. § 105(a) has been interpreted by other courts to give bankruptcy courts authority to do so. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) (noting in *dicta* that punitive damages are among potential remedies for a violation of the discharge injunction under 11 U.S.C. § 524(a)); *In re Eppolito*, 2018 WL 539773, at *5 ("Bankruptcy courts may appropriately use their civil contempt power under § 105(a) to order . . . punitive damages for violation of the discharge injunction." (internal citation omitted)); *In re Dogar-Marinesco*, No. 09-35544, 2016 Bankr. LEXIS 4111, at *28 (Bankr. S.D.N.Y. 2016) (creditor found to have violated the discharge injunction and ordered to pay punitive damages); *In re DiGeronimo*, 354 B.R. 625, 644 (Bankr. E.D.N.Y. 2006) (same).

*See In re Dogar-Marinesco*, 2016 Bankr. LEXIS at *28 (requiring "'malevolent conduct' that demonstrates a 'complete and utter disrespect for the bankruptcy laws'").[3]

On the one hand, I do not see evidence of conscious malevolence in the law firm's or Ms. Scafuri's conduct, at least not prior to February 2018. On the other hand, the pursuit of the debt after November 2015 was at least reckless on the law firm's part. A law firm should not pursue a debt, after repeated notice of a bankruptcy discharge, without actively assuring itself that pursuit of the debt is permitted, but here the law firm proceeded without regard or respect for what the Bankruptcy Code provided and without any effort to determine whether its conduct was permitted. In addition, the Bressler firm ought to have stopped its pursuit of Mr. Beschloss when he informed them in November 2017 that he was going to rely on his discharge, and it definitely should have ceased action when the plain violation of the discharge was mentioned in the letter dated February 20, 2018. *E.g.*, PX-22. But the law firm did not do so. Even as recently as a few weeks ago, in a conference before this court, the law firm took the position that Mr. Beschloss's alleged agreements should be enforced notwithstanding the plain language of section 524(c) of the Bankruptcy Code, thereby requiring that further proceedings be held with respect to a question that, quite frankly, ought to have been self-evident. Given that the law

---

[3] *See also In re DiGeronimo*, 354 B.R. at 644 (noting that "punitive damages are typically awarded [only] in cases where there is particularly egregious creditor misconduct" and awarding punitive damages despite the creditor's contention that it had a "good faith belief" that the debt at issue was not dischargeable); *In re Vazquez*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) ("the courts that have awarded punitive sanctions for violations of the discharge injunction require actions taken with either a malevolent intent or a clear disregard and disrespect of the bankruptcy laws); *cf. In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990) (pursuant to 11 U.S.C. § 362(a), punitive damages can be awarded only upon "[a]n additional finding of maliciousness or bad faith on the part of the offending creditor").

firm continued to pursue the matter even after it was informed, clearly, that its actions were in violation of the Bankruptcy Code, I will award punitive damages of $4,000.

Accordingly, I hold that Mr. Beschloss's entire debt to the Bressler law firm was discharged by his chapter 7 filing; that the Bressler firm and Ms. Scafuri will be enjoined from making any further effort to collect or to enforce that discharged obligation; that the Bressler firm will be directed to return the $1,000 post-bankruptcy payment that Mr. Beschloss made; that the Bressler law firm will be obligated to pay the reasonable attorneys' fees and expenses that Mr. Beschloss incurred in enforcing the terms of the discharge injunction, in such amounts as the Court may determine proper unless the parties are able to reach agreement on that question; and that the Bressler firm will be assessed punitive damages in the amount of $4,000.  A separate order will be issued to confirm these rulings.

Dated: New York, New York
       May 8, 2018

                                    /s/ Michael E. Wiles _____
                                    HONORABLE MICHAEL E. WILES
                                    UNITED STATES BANKRUPTCY JUDGE